case of the day, which is United States v. Cade, appeal number 23-1001. Mr. Fenner, welcome. Good morning, Your Honors. May it please the Court, Counsel. I plan to reserve a couple of minutes for rebuttal, so I'll pay attention to my time. Your Honors, this case deals with a stop on the street, and I'm going to focus my argument in this case on what I believe are really the strongest issues here. And I'm going to focus on the initial stop of Mr. Cade with another individual, so that we're clear. Factually, there were two Chicago police officers. They were touring a neighborhood. They saw two individuals on the street. They discuss it as, well, they're on the street. Maybe they're obstructing traffic. Maybe there's a car with its headlights on that shouldn't be on while they're parked. And maybe somebody is drinking alcohol on a public way. And they come around, and their attention is drawn to these two individuals, Mr. Cade being one of them, and the second one we'll refer to as Individual 1, as they're referred to in the brief. And when they come around, they approach a female Individual 1 and Mr. Cade, and the female individual is holding a red Solo cup. When the officers approach, they pull their car up. It's, I believe, undisputed that it's pulled up sort of next to them. The officer's car is now blocking traffic. Their overhead lights are put on, and two officers get out of their vehicle, and they approach Mr. Cade, and they approach Individual 1. When they do that, it's my position that at that, at the outset of this encounter, that there is a seizure that is occurring. And that seizure is based on... Is that, yeah, go ahead. That was my question. Go ahead. That seizure is based on the fact that the officers have pulled their car up. They're blocking traffic. Their car is somewhat, maybe would make it difficult for a person to drive away if they wanted to drive... But your client's not in the car. No, he's not. So is your position, in order for us to find that this is a stop, do we have to find that every time a police officer activates its lights at night, it's a stop? In other words, take the facts a little bit differently. An individual is outside of a gas station at 12 o'clock at night, and the gas station is closed, okay? Police officer pulls into the parking lot, activates its lights, which happens all the time, gets out of the car, approaches the individual. The individual to get into and drive away. But under your theory, is that a stop? Not in and of itself, Your Honor. There's a number of other factors, and the factors are non-exclusive in the cases. What's different between my example and this case here? Well, Your Honor, in this case, the officers pull up closely near where Individual 1 and Mr. Cade are located. Both officers immediately exit the vehicle. They activate the overhead lights. Both parties turn around to look at what is occurring and address the officers. Shortly thereafter, the audio on the recordings begins, and this is all captured on body-worn camera. And the officers make an approach quite close to the two individuals, to Individual 1 and Mr. Cade. And at that time, Mr. Cade looks around, he sees the officers, the officers approach. This is the type of approach by the officers that Mr. Cade would not feel free to simply turn and walk away from these officers. The officers have made a show of their authority by turning on the overhead lights on their car, exiting the car. They didn't ask a question through the window. They blocked traffic themselves with their car and approached closely, right up to the two individuals. So, Mr. Cade could not have felt free to remove himself from that situation and simply walk away. Additionally, the officers... But neither could the guy at the gas station. And neither could the guy at the gas station. And that would be my position on that, that yes, a person would not feel free to walk away. And if they did, or if they ran... What if the officers didn't activate the emergency lights? That would absolutely change the situation. That would take away at least one element of authority. But our cases consistently say there's this officer safety issue, right, with the lights. And as you indicated in the body-worn camera, the officers kind of pull over to the side of the road. I think it appears to me that they pulled over and traffic could get by, but it was like in a situation where they were squeezing by, right? So the officers to pull over without activating any lights. They've got a dark vehicle now that's parked, sort of obstructing traffic. They get out of the car. They're not lit up at all, right? This presents an officer safety issue. Just like my example at the gas station. An officer pulls in, shuts the car off, turn off the lights, get out of the car. Now you've got officer, individual standing in close proximity, no lights, nobody knows the officer there. That seems to me to be inconsistent with our case law, to say the activation of the lights equals stop. Well, the activation of the lights, again, in and of itself does not equal the stop. It's the combination of the activation of the lights, the officers approaching closely to the individuals. They get out of the car very quickly. They move very quickly up and are close to Mr. Cade and to Individual 1. That Individual 1 and Mr. Cade both submit to this show of authority by the officers as an indication that they do not feel free to leave, that they are not free to leave at that time. It's that combination of all the factors. Another way to look at this would be... Can we go back to your example? You were talking through if he had taken off running, then you stopped yourself. If he had taken off running, Your Honors, he obviously, that would be a method of him saying, I don't want to have this encounter with the police officers, but the case law there clearly, again, tells us that his flight then would potentially provide reasonable suspicion. What I'm suggesting is that at the time these officers pull up and they make the show of authority and he submits to that show of authority, that's where the seizure occurs initially. At that time, he ceased, and there's no reasonable suspicion for that seizure. Isn't the search attenuated from the seizure, though? He doesn't have standing to challenge the search. He claims, it's not my car, not my satchel, he says it's my gun, but even if he's seized, they can still search the car and you've got this attenuation problem, I think, right? No, I think that, and I'll concede the issue as far as the standing for the firearm in the car, but the statement becomes the biggest concern then because the statement clearly flows from the fact that he's detained in this case, that he's detained in this situation. Does it flow from they're detaining him or detaining his friend? No, it flows from they're detaining him because if they detained only individual one who was there, and we actually have no evidence that they even know each other or anything else, they just happened to be together at that time, we're making the assumptions that they are friends or know each other. We know he didn't have a cup. We know that he didn't have a cup and that there was no conduct observed by the officers at that time that justified their belief that he was drinking on a public way, other than he was standing near someone who admitted that they were, and I think that- You assert though that the officers lacked reasonable suspicion to investigate obstruction of the roadway. Well, Your Honor, I think I would to some degree, and the reason why I would say that is because when we look at the video, it's two people standing. I mean, I don't believe that you can assert that anybody who's standing on the street side of a car that's parked is automatically subject to stop, detention, search, questioning by police merely because they're standing on part of the roadway, but traffic is going by. Let me try to reframe my question because that wasn't my question. All right? So, my question is, did they lack reasonable suspicion, the officers, to investigate whether or not Mr. Cade was obstructing the roadway? Well, Your Honor, I think from that question, you could say that any time anybody sets foot in a roadway, officers suddenly have a reasonable suspicion to suspect- And we know that it's not a subjective test. It's an objective test. That's correct. However, what we would open the door to by saying, oh, any time somebody is on a roadway, we're subject to a seizure for questioning. Your Honor, I'm sorry. I know I have limited time. I'll give you rebuttal time. The case reminds me of a case of ours called U.S. against Paniagua Garcia, which had to somebody's got a cup in a car, maybe it's got alcohol in it, but that's not a reasonable suspicion. It doesn't prevent an officer from asking. I think the critical distinction here is between something a police officer might think is worthy of inquiry versus reasonable suspicion that allows a stop, a seizure of people to carry out that investigation. And that's a higher standard than just, gee, this might bear looking into. And I think Your Honor is absolutely correct there. So when the officers pull up, they get out. If they have a reason or a justification for inquiring further, they don't in this case. They inquire of individual one as to what is in the cup, and she makes an admission. And that's where I say, even at that point, if you have reasonable suspicion. Let's say you don't have reasonable suspicion before, but you get reasonable suspicion at the time that individual one says. You clearly have it at that point for her. For her. But when you take Mr. Cade and handcuff him to her, and you never make it. But wait a minute. You're skipping one major part here, which is where they say, where was the satchel you were just holding 15 seconds ago? And he says, I didn't have a bag. Or the bag, or whatever it's called. I didn't have a bag. Now they know. We saw you with a bag, man, 15 seconds ago, and you don't have a bag, and you're telling us you never had a bag. However, having a bag doesn't yield reasonable suspicion for anything else. These officers have a hunch about a bag. He's lying to the police. He's lying to the police. He's standing in the street with a woman with an open alcohol container in her car, drinking alcohol. But the question is whether or not they're investigating a bag, or they're investigating open alcohol. And they don't investigate open alcohol with respect to him. Why can't they be investigating both? The suspicion to stop Mr. Cade and detain him is not the fact that he had a bag at some point. They can certainly ask him about that. But the fact that he had a bag, and the fact that he even lies and says, no, I don't have a bag now, or I don't have a bag, doesn't provide reasonable suspicion in and of itself, where he also is not involved in the open alcohol. And he clearly never was involved. That's interesting to say he's not involved in the open alcohol. You're reaching that conclusion after a 15-second investigation by the police. Just because he's not holding at that moment a glass of open alcohol, how could the police conclude that quickly that he's not involved in the open alcohol? I think that the initial matter would be to simply ask the question, were you sharing a drink? Or did you have anything? Are you drinking here? But they never ask that question. Their questions are all centered on their hunch. And the point that I wish to make, and I'll end, is that at that point he's detained. I don't contest the standing issue with respect to the search, but the statement all flows out of this detention. And because the statement flows out of the detention, that is the Fourth Amendment violation. That is the violation that is what we seek to avoid or suppress here. Suppress the statement. Essentially the statement. There isn't standing with respect to that. But the fact that the illegal detention leads to the statement, but for the officer stopping him, even though they never ask about drinking or anything else, but for that, handcuffing him to the other person, he doesn't get asked the question. He doesn't get Mirandized. He walks away. That's an interesting theory. That's a double attenuation theory, really. Because if it's a stop, it doesn't lead to the search. You can't challenge the search. But you're sort of bootstrapping the statement into the initial stop. Because once they find the gun, they clearly have reasonable suspicion at that point. Then he makes the statement, right? So you're tying it all the way back to the original stop. Call it a stop. You're tying it all the way back. And you're skipping the search, which is interesting. It's an interesting way to think about it. It has to be valid at its inception, Your Honor. That's our position. Your Honor, I appreciate the court's time. We'll give you a minute on rebuttal, Mr. Brown.  OK, Mr. Leva. May it please the court. Edward Leva on behalf of the United States. The district court correctly denied defendant's motion to suppress without a hearing. I'd like to address all junctures of the interaction between the defendant and the officers, but I want to start with the recovery of the gun that the defendant seeks to suppress. I want to start with the decision that this initial encounter was consensual. That's just more helpful for being able to package this seizure. We have emergency lights blocking the roadway. The vehicle can't exit on a one-way street in Chicago. And so I'm just trying to talk us through how is that not just a classic show of authority. So the district court correctly determined that this initial encounter was a consensual encounter. And when you look at the totality of the circumstances, emergency lights alone do not turn this into a seizure. And that's the Clemens case. The officers were using emergency lights at night. They approached a vehicle that was already stopped, and the court held that that was a consensual encounter. Similarly here, the use of lights in and of itself does not make this a seizure. When it happens at night, there's other vehicles coming down the road, and there are officer safety concerns, as Your Honor previously noted when defense counsel was talking. Moreover, the positioning of the car does not turn this into a seizure, because this is not a case where law enforcement uses multiple vehicles to block all exit routes. Mr. Lee, but was anybody in the car? There's a baby in the back seat. Was anybody in the car to drive away? No, Your Honor. So what difference does it make whether the car was blocked in or not? I agree. It doesn't matter because ultimately they could walk away by foot if they wanted to. Maybe it matters if they're in the car, right? If they stop behind the car, the people could drive away and think, oh, the police officer's here to investigate a burglary. I'm getting out of here, right? They skedaddle, right? But if they're not in the car, what difference does it make where the police officers stop? I agree with Your Honor, and I think the lights in the car do not turn this into a seizure. So then we need to turn to the approach that the officers made. You're not suggesting, though, that the adults could walk away from the car, leaving the child alone? I mean, well, I think the defendant was able to walk away if he wanted to because when you look at the interaction, they are focused on individual one. And so a couple things about consensual encounters, most of the factors weigh in favor of a consensual encounter here. They issue no commands. They don't show their weapons. They don't engage in any disrespectful communications. They don't raise their voices. They don't issue any orders to either individual one. They don't even say anything to the defendant. And they focus on individual one, and it's within 25 seconds they ask what's in the cup, and she admits that there's alcohol in there. And if Mr. K had walked away within those 25 seconds, would that have created reasonable suspicion? So I think defense counsel suggested if he had run away. I think that would have been suspicious. If he sees the officers and he just starts bolting down the street, that would have been reasonable suspicion. But if he had said, officers, as you're asking my friend here some questions, I'm going to take it inside, he could have been at liberty to do that. Well, wait a minute. What about if they said, where's the bag that you were just holding? And he said, I don't have a bag. And they said, we just saw you with a bag 25 seconds ago. Isn't that reasonable suspicion right there? I think that in this context, I think that does add to the reasonable suspicion analysis. And that didn't occur. Reasonable suspicion of what? Reasonable suspicion of at least two violations. Number one, drinking on the public way. It would be drinking on the public way. I think it would be reasonable suspicion. So what you have when the officers ask. So me having a bag in my hand is reasonable suspicion that I'm drinking in the public way? No, Your Honor. Not that in and of itself. But the totality of the circumstances here. So what you have is. Why is it not reasonable suspicion that the bag contains alcohol? And that's where I was going, Your Honor. I think Judge Pryor's question was that in and of itself. And I'm not sure that that by itself is enough. But we have more than just that here. Because when they approach, they see she's holding a red cup and she admits that there's alcohol. And then it's not until after that point that they ask about the bag. And so they know at that point she's definitely drinking. They know that he had a bag and he no longer has it. And he's lying about it. So it's reasonable to think that he's standing in the street with her. That they might be drinking together. That's not unreasonable. Going back to Judge Kirsch's question. Holding the bag is what they saw. When they approached, they didn't have a bag. He didn't have a bag anymore. I guess I'm trying to get to the heart of the question of what is that reasonable suspicion of? And your response was drinking in the public way. I'm sorry. Maybe I misspoke. I think the totality of the circumstances, when you look at she's got a red cup, she admits she's drinking. He had a bag. He no longer has a bag. He's now lying about having the bag. All of that combined amounts to reasonable suspicion that he may also be involved in public drinking. And so it's critical. This initial encounter is also only 25 seconds. And the district court correctly held that the stop did not occur until after she admitted that there was alcohol at that point. They take him to the rear of the vehicle. There's a stop at that point. There's reasonable suspicion at that point for drinking on the public way and also obstruction of traffic. Remember, we've got... The obstruction of traffic suspicion is preposterous. Okay? We're talking about standing next to a parked car on the street side of nothing more, right? Judge, I think it is more than that because this is not a situation where, I mean, they're socializing in the street. He admits that they're talking together and she's drinking alcohol. Standing next to a parked car. I mean, come on. This is life in the United States. And, Judge, it's not a temporary... It's not that they're loading the kid into the back seat or that they're about to go on their way somewhere. I mean, she says at one point, we're not driving. They're socializing in the street. But if Your Honor is troubled by the stop, I'll return to... Deeply. Deeply troubled. I'll return to where I started, which is the recovery of the gun. The defendant has no basis to object to the recovery of the gun because it's the officer's recovery pursuant to a search of a vehicle in which he has no reasonable expectation of privacy. So he cannot object to the search. Oh, I know. I think part of the problem... You don't have reasonable suspicion about drinking in the public way sufficient to stop anybody until she answers the question, okay? And I think Paniagua makes that pretty clear. But I'm... And I understand you've got suspicion focused on the woman. But I'm troubled by then the defendant and the woman being handcuffed together while this investigation goes on and where that leads. And that happens later during what was a rapidly unfolding investigation. Right, but there's... But... Okay, go ahead. So after he's asked to go to the rear of the vehicle and then Officer Myers, who's interacting with Individual 1, quickly determines that there's an open bottle of alcohol in the rear of the vehicle. And as he's noticing that, he also... With a child in the vehicle. With a child in the backseat. And the defendant also lies about the bag he was just wearing. And this all happens over the course of about between a minute and a minute and a half. And it's not until after that point that the handcuffs are applied. And critically, Officer Perez-Pacheco in the rear, he tells both Individual 1 and the defendant, you're not under arrest. He completes putting the handcuffs on. And as he's doing that, Officer Myers up front asks, do you have a CCL or Floyd card? Signaling to his partner that I've just identified a firearm. So now you've got two individuals drinking, lies, open bottle of alcohol, and now a firearm. And so it's not unreasonable for the officers to apply the handcuffs at that time. Going back to a point that defense counsel made, that the statements emanate from an initial stop. It's the government's position that there is sufficient attenuation through intervening circumstances, namely the recovery of the gun, which was permissible. And the defendant makes his incriminating statements post-Miranda and after the recovery of the firearm. So it's not flowing from any initial detention. Why do we have to decide anything with respect to the stop? He's not challenging the suppression of the gun. He's only challenging the suppression of the statements. Why don't we just start with the finding of the gun, which he doesn't have standing to challenge? I think the court could do that, Your Honor. And unless the panel has any additional questions of the government, I'll cede the remainder of my time and ask that this court affirm the judgment of the district court. All right, thank you, Mr. Levin. Mr. Fenner, come on up. You can have a rebuttal. We'll give you two minutes of rebuttal. Thank you, Your Honor. Very briefly, and maybe even less than that. Your Honor, I don't think that you can disassociate and start analyzing this encounter at the time that the firearms are covered. Because the Fourth Amendment is implicated for Mr. Cade. It's implicated for Mr. Cade and Individual 1 at the very outset. And if not at the very outset, it's implicated at the point where Individual 1 makes an admission, but there's no evidence with respect to Mr. Cade, but Mr. Cade is still detained. And it is apparent from the video footage and from the body-worn camera that a pretext stops aside, obviously. We know that that's perfectly permissible, but there is a purpose here that is very clear. But isn't there a problem here? Let's just assume you're—illegal detention, okay? Search for which he has no standing to challenge. Finding of the gun. Arrest, Miranda, statement. We go all the way back to the illegal detention and suppress the statement. I don't think our case law, the Supreme Court case law, permits that. I don't believe that there's any actual attenuation in this case, that the finding of the gun doesn't attenuate the initial unlawful stop because we're talking about such a short period of time. We're not talking about a situation where maybe he was held for hours. And additionally, I would also point out that the point of arrest, at least according to the government's briefs, occurs after the making of the statement. So the statements are still made at the point where he's being detained. And that detention— But at that point, detention was based on the finding of the gun. Right, but it was initially based on something that they did not have a basis to detain him for. And then as a result of him being detained unlawfully at that point, the gun is then discovered even though he doesn't have standing, and then the statement comes from that. Your Honor, for all of those reasons, I ask that you reverse and suppress the statement in this case. Thank you, Your Honor. Okay, thank you, Mr. Fowler. The case will be taken under advisement. Thank you to counsel, and the court will stand in recess.